UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

   CHRISTOPHER D. WYMAN,              Case No. 12-32264-dof
                                                    Chapter 7 Proceeding
        Debtor.                                 Hon. Daniel S. Opperman
_____/
MICHAEL A. MASON, TRUSTEE,
and BARBARA DUGGAN,

      Plaintiffs,

v.                                                       Adversary Proceeding
                                                        Case No. 12-3347-dof

DIANA KAYE GENTRY, individually
and as sole shareholder and alter ego of
CREST HOUSING INC., CREST HOME
SERVICES CO., DK GENTRY, INC., GENTRY
SALES, INC., and related d/b/a's,

      Defendants.
_____/

Opinion Denying Plaintiff, Trustee Michael Mason's,
<u>Motion for Partial Summary Judgment as to Count II</u>

Introduction and Facts

On March 15, 2013, this Court entered an Opinion Denying Defendants' Motion to Dismiss and Motions of Plaintiffs and Defendants for Summary Judgment and Sanctions. In that Opinion, this Court expressed concerns regarding the authority of this Court to enter judgments as requested by the Plaintiff given the cases of *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012). The Court gave the Plaintiffs the opportunity to amend their Complaint. Thereafter, Plaintiff Trustee Michael Mason filed a Motion for Partial Summary Judgment as to Count II, and in particular regarding property commonly known as 6421 Grand River Avenue, Howell, Michigan.

1

The relevant paragraphs of the Plaintiffs' Complaint are:

9. Prior to 2006, WYMAN and GENTRY operated numerous businesses, under two (2) corporations and a variety of assumed names, owned by GENTRY, in which both were officers and active principles. **See, Exhibit 1, Pre 2006**.

10. In 2001, WYMAN, WYMAN INC., his then wife GENTRY, and, several of their businesses were sued by various creditors in various courts. **See, Exhibit 2**.

11. To place assets beyond the reach of these creditors, WYMAN and GENTRY entered into a scheme for a "sham uncontested divorce" in 2003.

12. WYMAN transferred nearly all his assets – real and personal – to GENTRY and/or her solely owned and controlled entities for little or no consideration, under the guise of a "property settlement" dated May 16, 2003, that he did not sign; including but not limited to a fifty (50%) percent interest in the real property commonly known as 6421 Grand River Ave., Howell, MI. WYMAN retained liability for 50% of most of the debt secured by these properties.

   A. Upon information and belief, the fair market value of Wyman's fifty (50%) percent interest is $122,500.00.

13. Following entry of the Judgment of Divorce, WYMAN and GENTRY continued operating the same businesses, at the same location, under two (2) newly formed corporations, and, newly created assumed names. These were titled solely in the name of GENTRY. **See, Exhibit 1, Post 2006**.

14. GENTRY continued to "assist" in the operation of WYMAN'S business; supervised his real estate activities, as his Associate Broker, under her real estate brokerage company; provided substantially all WYMAN'S revenue/income through her various companies; and, shared joint debts and assets equally with WYMAN.

15. WYMAN and GENTRY entered into a private divorce agreement dated October 16, 2003, pursuant to which WYMAN transferred machinery and equipment to GENTRY and/or her alter ego corporations/businesses for no consideration for the purpose of defrauding creditors and continually concealing these assets from creditors and Trustee MASON.

   A. Upon information and belief, the fair market value of the personal property transferred was $844,500.00.

16. GENTRY also acted as WYMAN'S "shill", receiving his business revenue, income, and other receipts, through accounts held in the names of her corporations, unincorporated businesses, and, her licensee escrow account(s) at FIRST NATIONAL BANK IN HOWELL ("FNBH"), and, transferring such amounts to WYMAN and/or paying bills and expenses to third parties on his behalf, all to continuously conceal assets and income from creditors.

17.     WYMAN and GENTRY continued to transfer real and personal property back and forth between themselves and/or GENTRY'S new entities; and, to jointly incur debt using the transferred assets as collateral.  **See, Exhibit 3**.

18.     WYMAN continued to conduct business and receive and conceal revenue, income and assets through various corporate names and accounts operated and held by GENTRY and/or her alter ego 100% owned corporations at FNBH.  GENTRY then distributed such revenue, income and assets to or for the benefit of WYMAN, in the form of false "payments for services", false "loans", and, direct payments of expenses to third parties.

. . .

## COUNT II: ALL DEFENDANTS; FRAUDULENT TRANSFERS 11 USC 544(b) AND MCL 566.34

24.     WYMAN transferred real and personal property to GENTRY and her alter ego entities by sham divorce, with intent to defraud his creditors in violation of MCL 566.34(1).

25.     DUGGAN is a state court Judgment Creditor of WYMAN whose claim arose September 25, 2008 and against whom the transfer of real and personal property and/or an interest therein, by WYMAN to GENTRY and her alter ego entities, is void.

26.     Trustee MASON may avoid the transfer(s) of real and personal property under 11 USC 544(b) on behalf of the Bankrupt Estate and may recover the property or its value for the benefit of all creditors, under 11 USC 550 and MCL 566.38.

In response to this Complaint, various Defendants filed Motions to Dismiss, and the Plaintiff responded to those Motions to Dismiss, as well as filed a Cross-Motion for Summary Judgment.

The Plaintiff identified the following material facts as not being in dispute:

1.      Prior to 2006, WYMAN and GENTRY operated numerous businesses, under two (2) corporations and a variety of assumed names, owned by GENTRY, in which both were officers and active principles.  **See, COMP., Exhibit 1, Pre 2006; MO GROUP EXHIBIT 1**.

2.      In 2001, WYMAN, WYMAN INC., his then wife GENTRY, and, several of their businesses were sued by various creditors in various courts.  **See, COMP., Exhibit 2**.

3.      On March 19, 2003, while husband and wife, WYMAN transferred to GENTRY, for no consideration, his fifty (50%) percent interest in the real property

commonly known as 6241 Grand River Ave., Howell, MI., used as his and GENTRY'S business location, by QUIT CLAIM DEEDS drafted by GENTRY. **See, MO GROUP EXHIBIT 2**.

4. By Agreement dated March 19, 2003, GENTRY contracted to "assist" WYMAN in the operation and management of WYMAN'S businesses, with all continuing at the same location. **MO EXHIBIT 8**.

. . .

6. On May 16, 2003, GENTRY executed a Divorce Judgment against WYMAN in Case No. 03-1955-DO, a divorce action in Livingston County MI. **Case No. 09-36472, DE 62.**

7. WYMAN did not sign the Divorce Judgment, was not represented by counsel, and, did not appear for presentment in state court. **MO EXHIBIT 3**.

8. Following entry of the Divorce Judgment, WYMAN and GENTRY continued operating the same businesses, at 6241 GRAND RIVER AVE, BRIGHTON MI, under two (2) newly formed corporations, and, newly created assumed names. These were titled solely in the name of **GENTRY. COMP., EXHIBIT 1, Post 2006; MO GROUP EXHIBIT 4**.

9. GENTRY wholly owns and controls all her affiliate companies and businesses, which receive and distribute money and assets to WYMAN. **MO GROUP EXHIBIT 5, 5A-J, by entity and year**.

The Plaintiff attached copies of various Quit Claim Deeds dated March 19, 2003, and recorded on April 11, 2003, at the Livingston County Register of Deeds. The Plaintiff also attached a copy of a "Private Divorce Agreement Between Christopher D. Wyman and Diana K. Wyman" which stated in pertinent part:

1. GRAND RIVER PROPERTY is to be deeded to Diana and Diana will assume the mortgage with First National Bank in the amount of approximately $385,000.

2. Chris will continue to operate his business from the Grand River location through Dec 31, 2003 with the right to extend this with mutual agreement.

3. Diana will continue to assist in the operation of Chris's business.

4. In the event that any part of the Grand River property is sold, Chris shall have the opportunity to meet any offer and to become first purchaser in line

> of sale provided he can maintain the same time frames as contained in any offer.
>
> 5. Michelle Pichler and Dorothy Konoposki will not be allowed on the premises.
>
> 6. All joint debts and assets will be shared equally.
>
> 7. Diana will sign off all vehicles, equipment and the boat now in the name of Crest Housing Inc.
>
> 8. Crest Housing Inc will deed to Chris Wyman parcel "A" on Nichloson Road.
>
> 9. Crest Housing Inc will deed to Chris & Diana jointly parcel "B" on Nichloson Road.
>
> 10. Chris Wyman, through a corporate resolution, shall become the only officer & director of his corporation, CD Wyman Inc.
>
> 11. Diana Wyman, through a corporate resolution, shall become the only officer & director of her corporation, Crest Housing Inc.

This Agreement was signed by the parties on March 19, 2003. The Plaintiff also attached a copy of the Judgment of Divorce that was signed May 16, 2003. The Judgment of Divorce recites that the matter was heard in open court on March 21, 2003.

The Plaintiff's Motion for Partial Summary Judgment points out that the previous Opinion of this Court stated that the transfer occurred after the May 16, 2003, Judgment of Divorce, an inference the Court made from paragraph 12 of the Plaintiffs' Complaint. The Cross-Motion either contradicts or clarifies the Complaint by stating the Quit Claim Deeds and the Private Divorce Agreement were dated March 19, 2003, and that, as such, the Debtor and Ms. Gentry were therefore married at the time the Quit Claim Deeds were signed and are insiders as defined by M.C.L. § 566.31, which in turn creates a fraudulent transfer. The Motion continues to request that the Court void this transfer and order that the proceeds of the sale of the property received by First National Bank in Howell, an entity that is not a party in this case, be paid over to Mr. Mason as the Trustee

of the Debtor's estate.[1]

The Defendants timely responded to the Plaintiff's Motion and offered a pleading fashioned as an Affidavit of Diana Gentry that explains the economic benefits that both Ms. Gentry and the Debtor received from the transactions complained of by the Plaintiff.

## Statement of Jurisdiction

The issues raised by the Plaintiff in this case are based upon state law, M.C.L. § 566.34 and are not within Title 11 of the United States Code. Accordingly, pursuant to *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), this Court, when appropriate, elects to make proposed findings of fact and conclusions of law in a report to the United States District Court for the Eastern District of Michigan unless the parties agree otherwise or controlling statutory and case law change. *See* 28 U.S.C. § 157(c). Because the Court is denying partial summary judgement, which is not a final order or judgment, the process of submitting proposed findings of fact and conclusions of law to the District Court is not necessary.

## Applicable Authority

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party

---

[1] The Plaintiff suggests that this be done in the form of findings of fact and conclusions of law that would then be delivered to the United States District Court for the Eastern District of Michigan for review and entry of a final judgment.

bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

The applicable Michigan statute, M.C.L. § 566.34 states:

Sec. 4.

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:

> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:

>> (i) Was engaged or was about the engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

>> (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

(2) in determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:

> (a) The transfer or obligation was to an insider.

> (b) The debtor retained possession or control of the property transferred after the transfer.

> (c) The transfer or obligation was disclosed or concealed.

> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

> (e) The transfer was of substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Analysis

M.C.L. § 566.34(1) holds that a transfer is fraudulent if it is made with the actual intent to hinder, to delay or defraud any creditor of the debtor. M.C.L. § 566.34(2) also sets elements to consider whether actual intent exists. Plaintiff argues that the March 19, 2003, execution of the Quit Claim Deeds, which occurred prior to the March 21, 2003, hearing and the May 16, 2003, execution of the Judgment of Divorce, are fraudulent transfers.

The Plaintiff is correct that Michigan law, most notably *Estes v. Titus*, 751 N.W.2d 493 (Mich. 2008), holds that only one badge of fraud is sufficient to maintain a cause of action under M.C.L. § 566.31. That being said, the mere fact that one badge of fraud exists is not sufficient, on its own, to hold, as a matter of summary judgment, that the plaintiff should prevail. This is especially true here where the Plaintiff's own pleadings raise questions as to the nature of the relationship between the Debtor and his ex-wife. For example, the March 19, 2003, Agreement seems, at first blush, to be a typical agreement made between soon-to-be ex-spouses to divide up their assets. On the other hand, the Plaintiff's points are well taken that this could be, in the

8

Plaintiff's words, a "shame divorce."

The Court also notes that the *Estes* case continued to hold that:

> Therefore, real estate and the financial instruments described in MCL 557.151 held as tenants by the entirety cannot be the subject matter of a UFTA claim if only one spouse is the debtor. This conclusion fits into the larger statutory purpose of avoiding fraudulent transfers because it is difficult to comprehend how disposing of property that a creditor cannot reach could "defraud" that creditor.
>
> This rule applies when property held as tenants by the entirety is disposed of in a divorce judgment despite the fact that the divorce ends the tenancy by the entirety. This is because the spouses hold the property as tenants by the entirety until the marriage is dissolved. Under the UFTA, such property is not an asset, and its distribution pursuant to the divorce judgment is not a transfer.

*Id.* 498.

The Plaintiffs may or may not prevail at the trial of this matter. At the summary judgment level, however, the Court cannot grant the relief requested by the Plaintiff. It is possible that while one badge of fraud exists, the others may outweigh that badge. The very documents attached to the Plaintiff's Motion call into question whether there was a balanced division of assets. The offered response by the Defendants is of some help, but is in improper form to be considered by the Court on its own.

Moreover, the granting of the Plaintiff's Motion could set an unwise standard. Applied to similar facts, where soon to be ex-spouses agree to divide property and then decide to memorialize their agreement prior to the court hearing granting them a divorce, it would be improper to hold summarily that a pre-judgment of divorce execution of deeds is an ipso facto or per se fraudulent transfer. There are many legitimate reasons why ex-spouses wish to sign transfer documents - - convenience, lack of trust, and closure are three that come to mind. While it may be more prudent to wait until a judgment of divorce is entered, practical reasons often dictate a different timing. By

9

rejecting the Plaintiff's per se position, the Court does not preclude recovery, it merely allows the parties to the transfer the right to prove the lack of fraud as defined by M.C.L. § 566.31.

Second, the Court is also concerned whether the Plaintiffs can show that either was or is a creditor of both Diana Gentry and Christopher Wyman, which the *Estes* Court appears to require. The Plaintiffs' Complaint does not allege the status of either Plaintiff in that regard.

Finally, the relief requested by the Plaintiff includes the demand for turnover of property of an entity that is not a party to this action. While the Plaintiff may be correct that First National Bank in Howell is the initial transferee of Ms. Gentry, the Plaintiff has not cited any authority that First National Bank in Howell is not entitled to some notice of an adverse action taken against it, namely the taking of money given to it.

For these reasons, the Court denies the Plaintiff's Motion for Partial Summary Judgment. The Court will enter an Order consistent with this Opinion.

Not for Publication
**Signed on September 23, 2013**

                                           **/s/ Daniel S. Opperman**
                                           **Daniel S. Opperman**
                                           **United States Bankruptcy Judge**